The next case on the court's docket is 525-0275, Peoples v. Antoine Bush. Lucia, for the defendant. Okay, you may come up and start when you're ready. May I please the court? My name is Yilou Yee, assistant appellate defender, on behalf of Mr. Antoine Bush. We ask this court to reverse Mr. Bush's conviction and remand for a new trial. This case arises from the shooting of Maryse Harris. The central issue at trial was whether Mr. Bush was the person who shot Harris and whether the state could connect him to the firearm used in this case. In that shooting, the trial court allowed the state to introduce Peoples exhibit 4, a 20-second video recorded four months before the charged offense. The video should not have been omitted. The standard of review should be de novo under Peoples v. Forrest because the challenged evidence is a recorded video, and this court is in the same position as the trial court to decide what the video does and does not show. But even if this court applies abuse of discretion review, reversal is still required. No reasonable view of this record supports omitting a vague, remote, unrelated video as proof of motive, intent, state of mind, or possession during the charged shooting. Peoples exhibit 4 is a video Mr. Bush sent privately to his fiancée, a person unconnected to this case, about four months before the shooting. In the video, Mr. Bush said he could not speak and had a lot on his mind. He was explaining why he didn't want to talk with his fiancée at that moment. He then briefly lifted his shirt and showed an object on his waistband. Under Rule 401 and 402, evidence must make a fact of consequence more or less probable. This video did not do that. The fact of consequence was not whether Mr. Bush had the ability to possess a gun at some point in his life. The question was whether he possessed or used a firearm during this charged shooting. The video did not answer that question because the video had no real connection to this case. It was not sent to Harris or anyone involved in this case. It did not mention Harris or the shooting at all. It did not refer to any disputes involving Harris. It did not show a plan, threat, preparation, or motive for this offense. In addition, the firearm used in this shooting was never recovered. And the state's own gun witness testified that he could not definitely say the object in the video was a real gun. Did anybody challenge the actual authenticity of the video? Was that an issue at all? No, no one challenged the authenticity of the video. So during the pre-trial hearing, the trial counsel did challenge that the video should not be omitted because it's not relevant to this case. So it was a relevancy? Yes. Argument? Yes. Okay. How would you respond to the argument that the video is relevant to show the defendant's state of mind and that he solves his problems by projecting a willingness to use deadly force? Yes, Your Honor. Your Honor, the evidence is irrelevant because the state gun witness testified that he cannot definitely say that the object is a real gun or not. And the trial court judge also said that it doesn't matter whether it's a real gun or not. If it doesn't matter whether it's a real gun or not, then he won't be able to connect this case to this shooting or the firearm used in this case. Thank you. Thank you. And the trial court stated that whether the object in the video was a handgun in question, even a handgun or not, doesn't matter. The trial court believed that the video showed Mr. Bush's state of mind months earlier and suggested how he would solve the problem. So it doesn't matter whether the object was the handgun in question or even the real handgun, then the video did not help prove possession or the use of firearm in this shooting. And even if this court finds them minimally relevant, the video still should have been excluded because it was omitted entirely based on propensity reasoning. The trial court stated that the video suggests that Mr. Bush resolved the problem with a gun. This reasoning depends on the inference that because Mr. Bush supposedly displayed a gun when frustrated before, he was more likely to use a gun here, which is propensity. In his response brief, the state tried to label that same inference as intent and motive. It is true that either-or may be omitted when it's generally relevant for a non-propensity purpose. Intent and motive can be proper purpose, but this particular video did not show Mr. Bush's intent during the shooting or his motive to shoot Harris. Looking past the label, the only way the video helped the state was by inviting the jury to conclude that Mr. Bush acted in conformity with a supposed gun-related character. That is exactly the propensity inference rule for B for best. Finally- Let me stop you there for a moment. Okay, sure. The propensity evidence that you just described, the defense attorney during opening statements- Yes. Okay, did not object when the state said, we're going to talk to you about the weapon. Did the state ever connect the weapon that was referenced in opening statements to this weapon that was put forth in the video as being the actual gun that did the shooting? Does that make sense? Yes, your honor. So that is actually the reason why we believe the evidence was not harmless, just because the state used it multiple times, the state placed it multiple times during the trial to ask the witness to testify on that video. And then also at the closing, where the defendant had no chance to rebuttal, the state again say that- Wait, what do you mean the defendant had no chance to rebuttal? Because- Because the state did it in their own closing. Okay, I understand. Yeah, at the closing, the video was played to the jury again, and then the state suggests that this could be the gun used to shoot Harris. It's exactly the gun shown in the video. Therefore- But there was no objection by defense counsel, was there? Yeah, that's true. There was no objection from the trial counsel about the witness testifying on this video. But this issue is still preserved because the trial counsel moved to exclude the video at the pre-trial hearing, and then the lower court held a hearing, and the issue was raised again in the post-trial motion. So the state still bear the burden of showing that the arrow was not harmless, and the state cannot meet that burden because this was not an overwhelming case. The shooting lasted only seconds. The civilian video did not show the shooter's face, race, or gender. The firearm was never recovered. There was no physical evidence tying Mr. Bush to a particular gun, and Harris' credibility was disputed. Both Harris and Mr. Bush had relationship with Ms. Nam, and Harris had a prior felony conviction involving Ms. Nam. Harris also gave inconsistent statement about his feeling toward Mr. Bush. He initially denied having animosity toward Mr. Bush, but later admitted that he has once prayed Mr. Bush belong outside of the apartment before the police required him to bring them back inside. And Detective Markov acknowledged that he did not investigate John David, who had threatened to kill anyone living at Ms. Nam's residence where the shooting happened, less than one month before the shooting happened. Another witness testified that he saw a musket person running near the scene. So in that context of video matter, he gave the jury a visual image of Mr. Bush associated with the gun-line object. It allowed the state to suggest a connection to the gun, and the state argued at trial that this might have been the gun used to shoot Harris. It invited jury to use unrelated conduct as proof of guilt. Because people exhibited force was irrelevant, because its only real force was propensity, and because the state cannot show that their error was harmless, Mr. Bush was especially asked this court to reverse his conviction and remand for a new trial. Thank you. But that was one issue, right? Yes, there's only one issue at this time. Well, did you raise ineffective assistance to counsel? Yes, I also raised ineffective assistance, because the counsel failed to object the admissible of the act during the trial. So, if there was error, as you allege under the ineffective assistance of counsel claim, wouldn't you also have to show prejudice under Strickland? I believe for this issue, the test is that the video is irrelevant, and then also it was omitted based on propensity. One second. Yes. The video was preserved. That error was preserved, you told me, right? Yes. What I'm asking about is the error by the trial counsel. I asked you a couple of questions where the defense counsel didn't object, right? Yes. So, if we agree with you that that would be error, how the trial counsel conducted itself, didn't make objections, what would be the prejudice to your client? Do you have to show that? By the case people be smart, we don't need to conduct that test, because we are arguing that the video is irrelevant, and the video, for an evidence to be omitted, it has to be relevant for a non-propensity reasoning. What if we decide that the video comes in, that that was not error? Would you still have an ineffective assistance of counsel claim, potentially, based on what you believe the defense counsel did poorly? In other words, if we decide the video claim, do you still have another claim that you would argue to us, which would be ineffective assistance of counsel? I believe so, Your Honor. Even we will still raise the ineffective assistance claim, because the witness, the expert witness, should not be able to testify on a video that is development on this case. Okay. All right. Questions? No, thank you. At this time, thank you. Okay, thank you. You'll have a few moments after your opponent speaks to us for the state. Is this Halbert? Mr. Halbert, yes. Halbert, Mr. Halbert. Please join us. Gladly. Good afternoon, Your Honors, counsel, and may it please the Court. My name is Jacob Halbert, and I'm here on behalf of the state. I'd like to take the defendant's argument in turn today, starting first with the standard of review this Court should apply, which is abuse of discretion. Then I'll shift to the admissibility of the other crimes evidence, and finally I'll address the harmlessness of the error, and if time permits, I'll address some of Justice Cape's concerns regarding ineffective assistance of counsel. With respect to the standard of review, the defendant suggests that this Court should review the admission of People's Exhibit 4 de novo. He maintains that under People v. Flores, this Court is in an equally good position to review the evidence because it is a video and no live testimony bore on the admissibility of the evidence. That position is wrong for two reasons, and this Court should apply abuse of discretion. First, even where no live testimony weighs on the admissibility of other crimes evidence, reviewing courts routinely apply abuse of discretion. And for example, this Court did it in Blaney and Baker, where photographs were admitted as other crimes evidence and no testimony weighed on their admissibility, and this Court should follow suit here. Second, any reliance on Flores is wholly misplaced. That case dealt with a motion to suppress, which is analytically distinct from evidentiary issues directed to the trial court's discretion. Our Supreme Court recognized that rulings on evidentiary issues cannot be made in isolation and require courts to exercise discretion in making considerations such as reliability, probative value, and the prejudicial impact that warrant deference. That deference is only abrogated where the court's discretion has been frustrated by an erroneous rule of law. Here there's no suggestion that the court applied an erroneous rule of law, and instead the record shows on pages 125 to 127 that the trial court made discretionary findings that warrant the application of abuse of discretion. The court observed that it couldn't determine when the video was exactly recorded, but that it was sent about four months prior to the shooting, and in doing so the court made findings on reliability and temporal relationship. The court also determined that the relevant issue was not whether the object was a real weapon or the murder weapon, or I'm sorry, the weapon used in the shooting, but instead the probative value from the video established the defendant's state of mind when agitated or frustrated. The court concluded that the probative value was. You know, really, when you talk about somebody being agitated, they pull up their shirt and they show you what, I mean, we don't even know what that was. Yes, Your Honor, we don't definitively know what that was, and the state acknowledged that in their evidence with Sergeant Eric Cote. And they put an expert on who would say what it was. Well, Sergeant Eric Cote was qualified as a firearms expert, but not an expert in determining whether a gun can be determined to be real or fake. So he was a firearms expert, but not specifically with fake guns. Well, you can be an expert in a lot of things, but that doesn't mean you get to testify to it. So my question is, though, the same as you want to show agitation, so a guy lifts his shirt and there's something there. Yes, Your Honor. How does that come in? The relevance isn't just based on the general agitation of the defendant alone. We have to consider the context in which it comes in. What other context? Well, in the video, the defendant is visibly upset about something. He says he has a lot on his mind. And in conjunction with that state of agitation, he lifts up his shirt and displays what appears to be a handgun and says, I have this. I'll spare the court the explicatives, but this thing on his hip. But he doesn't make it a gun. I'm sorry, what's that, Your Honor? He doesn't say it's a gun. That's correct, Your Honor. He doesn't say it's a gun. But whether or not it is a gun doesn't necessarily preclude the evidence itself. Well, I'm just wondering what it is that makes it relevant to a shooting case. Yes, Your Honor. And I would point, Your Honor, to the context leading up to the shooting in conjunction with the context in which the defendant made the video. As I mentioned, in the video, the defendant obviously displayed a state of agitation and lifted his shirt and showed what appeared to be a handgun. And then subsequently, the jury was presented with evidence leading up to the shooting that the defendant was agitated with the victim. At the end of October 2023. Is he saying in the video that he's agitated with that particular victim? He's not, Your Honor. But the state wasn't putting forth this evidence to prove modus operandi, which would require particular similarities. They were only putting it forth to prove intent and motive, which just requires generalized similarities. Motive doesn't go to the victim? Motive doesn't? Well, the victim wasn't mentioned in the video, Your Honor. But I don't think that that precludes the admissibility of the evidence. You're saying that it goes to motive. So is motive related to an individual in this case? His motive in shooting the victim is related to that individual, but based on his conduct in the video, we can infer his motive based on that agitated state. The video helped the jury understand the significance of the defendant's anger towards the victim, which I was mentioning, he believed at the end of October 2023, the victim was responsible for slashing his tires. He admitted to that in his own testimony. No, but in the video, is any of that in there? It's not, Your Honor, but we have the defendant's agitation in conjunction with what appears to be the display of a handgun. Four months or some odd time before, and my question to you is, how do you link those? Agitation. I'm having a hard time with that. I believe it's agitation in conjunction with the display of what appeared to be a handgun. And then leading up to the shooting itself, defendant's testimony was that he was angered with the victim, believed that the victim was responsible for slashing his tires, and four days prior to the shooting, sends a text message to an individual named Sparkle Jordan that he is going to pop the person responsible for slashing his tires. And at the time, I don't want to interrupt. I was just thinking, if the court had not allowed the video in, would the state have been able to prove its case? Certainly, Your Honor, and that goes to the harmlessness of the error, and the additional evidence in this case was overwhelming of defendant's guilt. And I'll point Your Honors to a couple of instances. Can I interrupt there? Yes, of course. To Justice Kate's point, I'm still a little bit curious about how you argue that this shows an exception of state of mind. Isn't state of mind generally something more in close proximity to or contemporaneous with the second incident? I mean, the criminal incident. You're talking about four months, and it sounds like the argument you're making is four months prior to the shooting, he was upset about something, we don't know what. So it's relevant because he probably was upset when he shot someone four months later. Well, Your Honor, I believe that the relevance comes from the agitation, as I was mentioning to Justice Gates, in conjunction with the display of the handgun. Excuse me. Yes. Could you please highlight for us the 403 analysis the trial court used? Obviously, it found some relevance, but was there the balancing that People v. Smart requires? Your Honor, I don't know that the trial court explicitly laid out that balancing. Is that important? It is important, Your Honor, but it doesn't mean that the court didn't do it, because when we look at the record, and I believe this comes in on page 127, the court concludes that the probative value of the video is not substantially outweighed by the prejudicial effect. And so when— Stating the conclusion is not stating the balance. That's correct, Your Honor. And even if this court were to determine that the trial court didn't conduct the proper analysis in balancing probative versus prejudicial effect, I still think this doesn't require reversal when we look at the harmlessness of this error. And so I'll point, Your Honor, to a couple facts that show the overwhelming evidence of the defendant's guilt with respect to the intent and possession of a handgun. First, we have the victim's positive identification of the defendant twice. Once while the victim is in his home after being shot by the defendant, and then a second time at the hospital while the victim is receiving treatment for his wounds. And the victim's trial testimony also established that he had the opportunity to observe the defendant during the shooting. The shooting occurred in a well-lit doorway. The defendant stood about two or three feet away from the victim, and nothing obscured the defendant's face when he shot the victim. And second, the evidence of defendant's anger with the victim prior to the shooting established his motive and intent in shooting the victim, and in turn his possession of a weapon. At the end of October 2023, as I mentioned, the defendant's tires were slashed, and he believed that the victim was responsible. The defendant testified that this angered him, and in response he sends a text to Sparkle Jordan saying he's going to pop the person responsible, again, who he believes is the victim. And then finally we have two statements indicating that the defendant shot the victim. The son of the victim's girlfriend testified that the defendant said he was going to shoot the victim because he needed a place to stay, and a court security officer testified that on January 13, 2025, the defendant said he shot him. So even if this court finds that the court didn't conduct the proper balancing test under Smart or that the evidence shouldn't have been admitted entirely, the error is still harmless. And to your point about ineffective assistance of counsel, Justice Cates, you do need to establish both deficiency and I see that my time is up. You do need to establish both deficient performance and prejudice. Now, if the court does determine that it was error to admit the video, obviously we have deficient performance, but that doesn't end the inquiry. You have to prove both elements. And with the harmlessness of the error, there's no way that they can prove that the defendant was prejudiced by this error. Thank you. One second. Yes, of course. Is, this is a little bit off of the point that you made. Is the appellate court committed to affirm the court's ruling, even if the court doesn't state a basis that would allow the ruling? Certainly, Your Honor. This court can affirm on any basis in the record. And secondly. No, I think you've answered it already.  Thank you. Thank you, Your Honor. Thank you, Your Honor. Justice Clark. No other questions. Thank you very much. Thank you, Your Honor. All right. From the defense. Your Honor, I want to emphasize that the video was not tied to any material fact in this field. And any supposed development depends on the forbidden inference that Mr. Bush was the kind of person who you sent when angry. Because the video was sent privately to his fiancee four months before this event happened. And it did not talk about Harris or anyone involved in this case. And it did not talk about shooting at all. And it did not talk about he want to resolve issue with handgun. So, if the video is kicked out, Mr. Halpern, the State, says that there's harmless error. How would you say there's no harmless error? How would you rebut his argument? Yes, Your Honor. There are two reasons. One reason is that the State relied heavily on this video to prove its claim. It praised the video most of the time during the trial. And it's the only piece of evidence that could – it's the only visual image that Mr. Bush associated with a gun-like object. In addition, there's other evidence that's supporting alternative explanation. There's at least two suspects that the detective failed to investigate. One, his name is John David, who had threatened to kill anyone who lived at Mr. Nunn's residence when the shooting happened, which is less than one month ago before the shooting when he made that threat. And then also another witness testified that he saw a masked person running near the scene right after the shooting happened. So there's alternative explanation to this case other than Mr. Bush being the shooter. Okay, yeah, I think that concludes my answer. Do you know what the burden is on people to prove if there's harmless error? Yes, the State bears the burden of showing that the error was harmless because this issue was preserved. What does harmless mean? What is the definition of harmless? Yes, Your Honor, it means that even if the trial court is proved this video, the State would still be able to convince Mr. Bush. So in my notes, I have no reasonable probability that the jury would have acquitted the defendant. So they have to show that. No reasonable probability. And I know I'm putting you on the spot here, but you have to then come back and say that's not true somehow. So without the video, what else is there? So without the video, because the gun was never recovered, then the State witness won't be able to connect some firearms that Mr. Bush probably possessed like four months before that to the firearm used in this case. So what the State has to do is to identify the shooter.   So we have an identification. Right? We have an identification of the victim. Yes, Your Honor, Harris, who is the victim, identified Mr. Bush, but his credibility was disposed because Mr. Harris, they both have a relationship with Ms. Nam. And Mr. Harris had a prior felony conviction involving Ms. Nam. And he also gave inconsistent testimony about his building to Mr.  So he initially denied that he had any animosity toward Mr. Bush, but later admitted that he once praised Mr. Bush's belonging outside of the apartment, and then the police had to come in and ask him to bring them all back inside. So credibility is one of your arguments. Yes, Your Honor, in that regard. Okay. Do you have anything else you want to say to us? I think that's it for my argument. No other questions. Thank you. Thank you. I have one more difficult question for you. The court's ruling basically says, I'm not saying entirely, but basically says state of mind exception for admissibility of the video. What about the argument that the video was admissible on other bases, such as weak, though it might have been that it was alleged at trial that it showed possession of a weapon similar to what was described as being used in the shooting? Your Honor, I believe the relevancy and it has to connect to the fact of disputes in this case. It cannot be a general firearm. It has to be the firearm used in this case. There's simply no connection between the object in the video because the state gun witness testified that he won't be able to tell whether the object in the video is a real gun or not, then there's no way that it could connect to the specific firearm used in this case. Okay. Thank you. Thank you. No other questions. Nothing further. Okay. Thank you very much. Thank you both. Thank you both for your arguments here today. This matter will be taken under advisement. We'll issue an order in due course.